IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BROWN, | : |
| Plaintiff, | : |
| | : Case No. 2:21-cv-5146 |
| v. | : |
| | : Chief Judge Marbley |
| WILLIAM COOL *et al.*, | : |
| | : Magistrate Judge Kimberly A. Jolson |
| Defendants. | : |

**OPINION & ORDER**

Before this Court is the Magistrate Judge's Report and Recommendation ("R&R") (ECF No. 76) on the parties' cross-motions for summary judgment. For the reasons set forth below, the Magistrate Judge's R&R is **ADOPTED in part and REJECTED in part**. Plaintiff Michael Brown's Motion for Summary Judgment (ECF No. 54) is **DENIED** and Defendants William Cool, D. Farmer, Dane Osbourne, and Travis Raypool's Motion for Summary Judgment is **GRANTED in part and DENIED in part** (ECF No. 66).

**I. BACKGROUND**

Acting *pro se*, Plaintiff brought this action under 42 U.S.C. § 1983 against Ross Correctional Institution's ("RCI") Warden, William Cool, and RCI Correctional Officers D. Farmer, Dane Osbourne, and Travis Raypool. (ECF No. 3). Plaintiff is currently incarcerated at RCI, and his claims stem from the alleged interactions he had with Defendants at the facility. (ECF No. 76 at 1). Construing Plaintiff's complaint liberally, he alleges that Defendants violated his First and Eighth Amendment rights. (*Id.*).

Over the span of nearly ten months, Plaintiff alleges that the following interactions with each Defendant, set forth in A-D, *infra*, amounted to violations of his constitutional rights:

### A. Defendant Raypool

On November 5, 2020, Plaintiff was on his way to dinner when he saw Defendant Raypool and another inmate having a discussion. (*Id.*). Plaintiff then "took it upon [himself] to keep the peace" and told the inmate that it was "pointless to argue with [Raypool]." (*Id.* at 1-2). In response, Defendant Raypool purportedly placed Plaintiff against a fence, patted him down, and sent him back to his cell without dinner. (*Id.* at 2). The following day, while Plaintiff was on his way to lunch, he was singing a song, prompting Defendant Raypool to tell him to "shut up." (*Id.*). After Plaintiff responded flippantly to the remark, Defendant Raypool advised Plaintiff he was on "lockdown," he "wouldn't be eating," and proceeded to escort Plaintiff back to his cell. (*Id.*).

On December 11, 2020, Defendant Raypool allegedly ordered three inferiors to escort Plaintiff to the "captain's office," where Raypool proceeded to "[smack him] and then threw closed fists…and proceeded to assault [Plaintiff] while [he] was defenseless." (*Id.*; ECF No. 54). Due to the incident, Plaintiff states he suffered a minor concussion. (ECF No. 76 at 2).

### B. Defendant Osbourne

On April 16, 2021, Plaintiff asserts that Defendant Osbourne went "beyond his duties to harass" Plaintiff and another inmate since Defendant Osbourne is a "recreational officer" and "had no purpose" being around Plaintiff. (*Id.*; ECF No. 54 at 1). Three days later, Defendant Osbourne and Plaintiff exchanged "snide remarks" while Plaintiff was being read a conduct ticket. (ECF No. 76 at 2). Afterwards, while being escorted back to his cell by Defendant Osbourne and another officer, Plaintiff claims that Defendant Osbourne slammed him to the ground as he was waiting for his cell door to open. (*Id.*). As a result, Plaintiff received seven stitches to his right ear. (*Id.*).

### C. Defendant Farmer

On July 7, 2021, Plaintiff was called into an office to be read another conduct ticket. (*Id.*). Defendant Farmer was at this hearing. (*Id.*). When another officer told Plaintiff to face the wall,

Plaintiff was in the process of doing so when Defendant Farmer ordered, "don't pull away from me." (*Id.*). Defendant Farmer then slammed Plaintiff against a wall and used a "choke slam" to take him down to the ground. (*Id.*; ECF No. 66 at 11). Plaintiff asserts that Defendant Farmer punched, choked, and crushed him while he was on the ground. (ECF No. 76 at 2). Plaintiff suffered from swelling and a small cut on his lip as a result. (ECF No. 66 at 10).

Following this incident, an investigation ensued, and witness statements were taken. Defendant Farmer claimed that Plaintiff was agitated during the ticket hearing and was being held in place by Farmer. (ECF No. 66 at 8). After being ordered to turn around, Plaintiff pulled away from Farmer's control which caused Farmer to place Plaintiff against the wall. (*Id.*). Once on the wall, Farmer stated that Plaintiff called him an expletive and cleared his throat as if he was going to spit. (*Id.*). Farmer reacted by placing Plaintiff on the ground, causing him to become more irate until he was escorted out of the office. (*Id.*). The officer who ordered Plaintiff to face the wall, non-defendant Sgt. Debra Lyons, also provided a statement. She stated that she did see Plaintiff pull away from Defendant Farmer and heard him yelling but did not confirm whether Plaintiff was preparing to spit. (*Id.* at 9). Other witness statements mirrored Sgt. Lyon's story: they saw Plaintiff pull away from Farmer but did not confirm whether Plaintiff tried to spit or not. (*Id.* at 9-10).

The Investigating Official found that Defendant Farmer's techniques to restrain Plaintiff were contrary to his training (*Id.* at 10). Instead of using a "choke slam" to bring Plaintiff to the ground, the Investigating Official found that Farmer should have been able to manage Plaintiff by physically holding him in the corner of the office. (*Id.* at 10). Concluding his investigation, the Official stated, "[w]hile it is believed that Officer Farmer did not choke slam the inmate purposely that does appear [to be] what occurred. Force is justified but not appropriate." (*Id.* at 11).

### D. Defendant Cool

Throughout the months of June to September, Plaintiff claims that multiple corrections

3

officers threatened him and harassed him. (ECF No. 76 at 3). Specifically, Defendant Farmer told Plaintiff to kill himself because Farmer's friends at another facility would kill him there anyways when he transferred. (*Id.*). Due to these remarks, Plaintiff claims he attempted to take his own life. (*Id.*). Plaintiff sought mental health services during this time, but his concerns for his well-being were rebuffed. (*Id.*).

Plaintiff attempted to notify unit managers of these alleged threats but to no avail. Plaintiff also claims that he used the inmate informal complaint system to notify Defendant Cool about his concerns. As warden of the facility, Plaintiff alleges that Defendant Cool is his legal guardian but failed to protect him from the staff who works there. (ECF No. 54 at 3). After receiving no recourse from the prison's system, Plaintiff filed the present suit.

Plaintiff and Defendants filed cross-motions for summary judgment, which were reviewed by the Magistrate Judge. In her R&R, the Magistrate Judge found that Plaintiff's motion should be denied, and that Defendants' motion be denied in part and granted in part. Plaintiff timely filed his objections to the Magistrate Judge's R&R.

## II. STANDARD OF REVIEW

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial when the record as a whole could not lead a rational trier of fact to find for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a party moves for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The Court ultimately asks, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

When a party objects to a magistrate judge's report and recommendation, the "judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(c). After this review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### III. LAW AND ANALYSIS

Since Plaintiff and Defendants cross-filed motions for summary judgment, the Court will address each in turn.

#### A. Plaintiff's Motion for Summary Judgment

As a threshold matter, this Court recognizes that Plaintiff is *pro se* and his pleadings should be liberally construed – but there are limits. *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). Plaintiff did not provide sufficient evidence to support the claims he made in his motion. Plaintiff's eight "points" outlined in his Motion for Summary Judgment as well as his objections to the R&R fail to meet his evidentiary burden. Instead, he rehashes facts that remain unsupported by evidence. Despite asserting that his claims are "supported by facts beyond any doubt," a reasonable jury could still return a verdict for the Defendants when viewing all the facts and evidence in their favor. As such, his objections are not well-taken and are therefore overruled. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation; Plaintiff's Motion for Summary Judgment is **DENIED** (ECF No. 76 at 5; ECF No. 54).

5

### B. Defendants' Motion for Summary Judgment

As the Magistrate Judge laid out in her R&R, Plaintiff alleges the following violations of his Eighth and First Amendment rights: (1) excessive force used against him on three occasions; (2) deprivation of meals; (3) deliberate indifference and failure to protect him from harm; and (4) retaliation against him for filing grievances. The Magistrate Judge also considered Defendants' qualified immunity defense. Based on the subsequent review of the R&R, the Court **ADOPTS** it in full.

#### 1. Eighth Amendment – Excessive Force

Plaintiff alleges that Defendants Raypool, Osbourne, and Farmer each used excessive force against him. Conversely, Defendants claim that these uses of force did not rise to the level of a constitutional violation.

The Eighth Amendment prohibits cruel and unusual punishment against prisoners, including unnecessary and wanton inflictions of pain. *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019). The standard for analyzing an excessive force claim under the Eight Amendment requires a court to look at "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). A prisoner must satisfy an objective and subjective component to make out an excessive force claim under the Eighth Amendment. *Rafferty*, 915 F.3d at 1094.

Under the subjective component, the inquiry focuses on the state of the mind of the prison officials. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). To determine whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm, a court considers several factors. *Hudson*, 503 U.S. at 6-7. These factors include: (1) the need for the use of force; (2) the relationship between that need and the type and amount of force used; (3) the threat reasonably perceived by the official; (4) the extent of

6

the injury inflicted; and (5) any effort made to temper the severity of a forceful response. *Id.* at 7.

Under the objective component, the pain inflicted must be "sufficiently serious." *Id.* This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Supreme Court has found that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* at 9. At the same time, not every malevolent touch gives rise to a federal cause of action. *Id.* The Eighth Amendment excludes "*de minimis* uses of physical force[.]" *Rafferty*, 915 F.3d at 1094 (quoting *Hudson*, 503 U.S. at 9-10).

### a. Defendant Raypool

The Magistrate Judge correctly notes that Plaintiff cannot satisfy the objective component for his claim against Defendant Raypool. (ECF No. 76 at 8). Despite claiming he received a concussion from Raypool, there is no evidence to support this contention. Plaintiff's objection does little to rebut this review. To use his own words, the "speculative" nature of his objection does not undermine the Magistrate Judge's finding that Plaintiff suffered no discernable injury that can be attributed to Defendant Raypool's alleged actions. (ECF Nos. 76, 77). Since the record contradicts Plaintiff's specific allegations against Raypool, no rational trier of fact could find for Plaintiff as a matter of law; summary judgment is appropriate for this claim.

### b. Defendant Osbourne

This Court has carefully viewed the video recording of the April 19, 2021, interaction between Plaintiff and Defendant Osbourne. (ECF No. 66-11). Although the video is choppy, Plaintiff appears to be leaning backwards as the officers escort him to his cell. In a witness statement following the incident, Plaintiff denied that he was resisting the escort. (ECF No. 66-4 at 15). Once Plaintiff and the officers escorting him arrive at his cell door, he begins to lean

7

towards the officer on his right, Defendant Osbourne, and it appears that the two make contact. Plaintiff alleges that he was trying to move out of the way so that the officers could open the cell door on Plaintiff's left, (ECF No. 3-1 at 4), but Defendants contend that he was instead trying to push Osbourne. (ECF No. 66 at 14). In the video, Defendant Osbourne then swings Plaintiff around and slams him to the ground. Shortly thereafter, the officers bring Plaintiff to his feet. After the incident, Plaintiff received seven stitches to his right ear. (ECF No. 66-5 at 3).

Defendant primarily argues that his conduct did not violate Plaintiff's constitutional rights, but argues that even if it did, he is entitled to qualified immunity. "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015). A qualified immunity analysis at the summary judgment stage involves two steps: (1) whether "the facts . . . alleged or shown make out a violation of a constitutional right"; and (2) if a constitutional right was violated, whether "the right at issue . . . 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At this juncture "[t]he Plaintiff bears the burden of showing that a clearly established right was violated and 'must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact.'" *Judd v. City of Baxter, Tennessee*, 780 F. App'x 345, 347 (6th Cir. 2019) (quoting *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608-09 (6th Cir. 2015)).

### i. *Constitutional Violation*

Turning first the subjective prong, Defendants contend that the force was not applied "maliciously or sadistically," but was instead the minimal amount necessary to control Plaintiff. The Magistrate Judge agreed, explaining that "Osbourne used the reasonable amount of force necessary to maintain discipline." (ECF No. 76 at 10). While true that "prison officials may use appropriate force to regain control of an aggressive inmate," *Cordell v. McKinney*, 759 F.3d 573,

8

581 (6th Cir. 2014), it is unclear whether the video depicts an "aggressive inmate" or whether the degree of force applied was "appropriate." *See Hudson*, 503 U.S. at 6-7 (explaining that courts consider, among other things, the need for the use of force, the relationship between that need and the type and amount of force used, and the threat reasonably perceived by the official). This Court is not convinced that the threat Plaintiff posed by leaning into Defendant Osbourne—handcuffed and flanked by two officers—was so great that it was appropriate and necessary to slam him into the concrete floor. See Cordell, 759 F.3d at 583 (6th Cir. 2014) (concluding that "it is difficult to reconcile the threat that [the Plaintiff's] turn toward [the officer] presented" with the officer's alleged decision to slam the Plaintiff into a wall headfirst when the Plaintiff's "arms were cuffed behind his back."). Nor is Plaintiff's contention that he was merely moving to get out of the way an unreasonable one, based on the footage. As a result, Plaintiff's claim boils down to a credibility determination, which is a function of a jury, not a judge. *Helphenstine v. Lewis Cty., Ky.*, 60 F.4th 305, 314 (6th Cir. 2013).

Next, this Court considers "whether a reasonable jury could conclude that 'the pain inflicted'" by Defendant Osbourne "was 'sufficiently serious' to offend 'contemporary standards of decency.'" *Cordell*, 759 F.3d at 585. It is all but self-evident that a reasonable jury could find that being spun around and slammed to the floor, and the resulting laceration requiring seven stitches, caused serious pain and injury. *See id.* at 586 (concluding that lacerations from being slammed into a wall supported a conclusion that the pain inflicted was serious).

####### ii. *Clearly Established*

Having established that there is a genuine issue of material fact as to whether Plaintiff's Eighth Amendment rights were violated, this Court turns to whether Plaintiff's asserted right was clearly established at the time of the use of force such that Defendant Osbourne is not entitled to

9

qualified immunity. Here, "clearly established" means "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). Courts must "define the 'clearly established' right at issue on the basis of the 'specific context of the case,'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), but "the *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015). "Although . . . qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002).

Viewing the facts in the light most favorable to Plaintiff, Defendant Osbourne may have inflicted "unnecessary and wanton pain" on Plaintiff. And at the time of the incident, it was clearly established that malicious infliction of pain was in violation of the Eighth Amendment. *Combs*, 315 F.3d at 556. On a more granular level, the Sixth Circuit concluded in 2014 that it would violate the Eighth Amendment to slam a prisoner, who was handcuffed and restrained, headfirst into a concrete wall. *Cordell*, 759 F.3d at 580-87. Although the facts of Cordell vary slightly from those *sub judice*—Mr. Cordell was allegedly slammed headfirst into a wall, while Mr. Brown was slammed face-first into a concrete floor, both were restrained at the time and injured in similar ways by the uses of force. Ultimately, because this Court finds there exists a genuine issue of material fact as to the threat that Plaintiff posed and therefore, the appropriateness of the force applied, a grant of qualified immunity would be improper. *Shevlin v. Cheatham*, 211 F.Supp. 2d 963, 972-73 (S.D. Ohio 2002).

### c. Defendant Farmer

The Magistrate Judge's R&R thoroughly outlines the July 7, 2021, incident involving Plaintiff and Defendant Farmer. (ECF No. 76 at 11-12). In her review of the events, she notes that the record is unclear on key moments of incident. (*Id.* at 13). Specifically, the video footage fails to show what happened while Plaintiff was held to the wall and while he was on the ground. (*Id.*). The parties offer opposing narratives to fill in these gaps. The resolution of these conflicting accounts comes down to a credibility determination, which is, again, a function for a jury. *Helphenstine.*, 60 F.4th at 314. The Magistrate Judge explained how a reasonable juror might find for the Plaintiff in light of the different stories offered by each party. (ECF No. 76 at 13-16). And because there is still a genuine issue of material fact as to whether Defendant Farmer used excessive force against Plaintiff in violation of his Eight Amendment rights and "there is sufficient caselaw surrounding choking or assaulting restrained plaintiffs to put Farmer on notice that the force alleged violated the Eighth Amendment," a grant of qualified immunity would be inappropriate at this juncture. (*Id.*). Seeing no objections from the Parties, the Court joins the Magistrate Judge in reserving this claim for a jury. Accordingly, Defendants' Motion for Summary Judgment for Plaintiff's claim against Defendant Farmer is denied.

### 2. Eighth Amendment – Deprivation of Meals

Apart from his claims for excessive force, Plaintiff also alleges that he was unconstitutionally deprived of meals by Defendant Raypool. (ECF No. 76 at 17). The Eighth Amendment protects against "'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Defendant Raypool contends that he did not violate Plaintiff's constitutional rights but also asserts that he is entitled to qualified immunity. As explained above, a qualified immunity analysis requires two considerations: (1)

11

whether the defendant violated the plaintiff's constitutional rights; and (2) whether the plaintiff's right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. At this juncture the Plaintiff "must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact.'" *Judd*, 780 F. App'x at 347.

### i. Constitutional Violation

Much like an excessive force claim, a conditions of confinement claim under the Eighth Amendment has an objective and subjective component. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011). The objective component requires a plaintiff to show that the deprivation denied him "the minimal civilized measures of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The subjective component is satisfied if the plaintiff shows that the prison official "acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455.

The extent of deprivation here remains unclear. In his complaint, Plaintiff alleges that on November 5, 2020, his housing unit was going to dinner. (ECF No. 1-6 at 2). He attempted to intervene in a dispute to keep the peace, but instead, attracted Defendant Raypool's attention. (*Id.*). After exchanging words with Defendant Raypool, Plaintiff was placed against the fence on the recreation area and was patted down by another correctional officer. (*Id.*). He then writes that he was sent "back to unit with a meal." (*Id.*). Context and evidence in the record suggest that Plaintiff meant *without* a meal. (*Id.* at 24). He alleges that the next day, on November 6, 2020, he stepped out of his cell singing a song, as his unit was about to go to lunch. (*Id.*). Defendant Raypool purportedly told Plaintiff to "shut up" and the two exchanged words again. (*Id.*). Defendant Raypool then told Plaintiff he was "on lockdown" and "won't be eating." (*Id.*).

In support of his claim, Plaintiff submitted a grievance form on which he explains that "officer raypool denied me my meal twice." (*Id.* at 24). The staff member who investigated the

12

incident explains that Defendant Raypool admitted to sending Plaintiff back to his unit without a meal on the first day, stating that it was "needed" to stop Plaintiff "from further encouraging and creating a disturbance." (*Id.*). Defendant Raypool, however, denied the second incident altogether, stating that Plaintiff was "not sent back to the unit on consecutive days." (*Id.*). Because the touchstone of a conditions of confinement claim is the extent of the deprivation or duration of exposure to a condition, *see Tarabochia v. Clatsop Cnty. Oregon*, 646 F. App'x 535, 537 (9th Cir. 2016), this tension in the evidence is a genuine issue of material fact. And were a jury to credit Plaintiff's account of events—that he was denied meals for trying to keep the peace and for singing a song—it could reasonably conclude that Defendant Raypool acted not out of necessity, but out of malice, and displayed a deliberate indifference to Plaintiff's need for food. To deny a defenseless person food, one of life's most basic necessities, is repugnant to a "contemporary standard of decency," and this Court will not sanction it. *Dellis*, 257 F.3d at 511.

### ii. Clearly Established

Again, viewing the facts in the light most favorable to Plaintiff—that he was denied multiple meals on several days for benign conduct—a reasonable jury could conclude that Plaintiff was deprived of one of life's necessities by an officer acting wantonly, with a deliberate indifference to his serious need for sustenance. And at the time of the incident, it was clearly established that a deprivation of "life's necessities," such as food, can form the basis for a claim under the Eighth Amendment. *See Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir.2001) (finding that a prisoner who received only a pint of milk and sixteen ounces of water over a three-day period stated an Eighth Amendment claim). Ultimately, because there remains a genuine issue of material fact with respect to the denial of Plaintiff's meals, a grant of qualified immunity or summary judgment for Defendant Raypool would be inappropriate at this juncture.

13

### 3. Eighth Amendment – Deliberate Indifference and Failure to Protect

Plaintiff also filed a claim against various prison officials for deliberate indifference and failure to protect. In his complaint, Plaintiff alleges that he "notified…acting Warden William Cool" about the alleged threats he was receiving from numerous prison officials through the prison's informal complaint system. (ECF No. 3 at 7). In his Motion for Summary Judgment, Plaintiff further asserts that Defendant Cool, as warden, was his "legal guardian…and did not protect [him] as he should've from staff who works for him." (ECF No. 54 at 3). Under the Eighth Amendment, prison officials must take "reasonable measures to guarantee the safety of its inmates." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A claim for failure to take reasonable measures to protect a prisoner requires a showing that a prison official acted with "deliberate indifference" to a substantial risk of harm. *Id.*

Similar to the preceding Eighth Amendment claims, there is an objective and subjective component for a claim for deliberate indifference. *Id.* The objective component requires the plaintiff to show he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component requires a showing that the prison official possessed a "sufficiently culpable state of mind." *Id.* "A 'sufficiently culpable state of mind' is one in which 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Furthermore, a claim under § 1983 against a supervisory official like Warden Cool requires the plaintiff to "'show that [the] supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct'…or otherwise he was 'personally involved in the events leading to Plaintiffs claim.'" *Crisp v. Neel-Wilson*, No. 2:15-CV-1265, 2015 WL 5882126 at *2 (S.D. Ohio Oct. 7, 2015) (quoting *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623,

634-35 (6th Cir. 2013)).

The Court agrees with the Magistrate Judge's decision that "there are no allegations in the record showing that Defendant Cool had a sufficiently culpable mind and disregarded an excessive risk to Plaintiff's safety." (ECF No. 76 at 20). Plaintiff failed to identify clearly Defendant Cool as the specific defendant whom he was lodging his claim against. In fact, Plaintiff names a non-defendant as the person who "continues to [show] his indifference" to Plaintiff's grievances. (ECF No. 3 at 7). Moreover, the evidence submitted in relation to this claim fails to show that Defendant Cool had implicitly authorized, approved, or knowingly acquiesced to any threats of violence or harm to Plaintiff. (*Id.*).

Plaintiff's objections do not remedy these defects. He states that Cool was his legal guardian at the time, and he failed to protect Plaintiff from prison officials who were threatening him. (ECF No. 77 at 2). But these contentions do not speak to Cool's culpable mindset, nor do they prove that he was personally involved in the alleged threats. Furthermore, Plaintiff's concession that he "honestly [] never really cared about Cool" does not compel this Court to reject the Magistrate Judge's analysis. (*Id.*). As such, the Court adopts her recommendation and grants summary judgment to Defendant Cool for this claim.

### 4. First Amendment - Retaliation Claim

Plaintiff alleges that he suffered retaliation by prison officials after he submitted informal complaints and grievances. Specifically, Plaintiff claims his filings were "[shut down] every time without taking a second look in the situation." (ECF No. 3 at 7). Retaliation against a prisoner for exercising his constitutional rights violates the Constitution. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). Three elements make up a retaliation claim: (1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff; and (3) the adverse action was at least partially

motivated by the plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. Filing non-frivolous grievances constitutes protected conduct under the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Despite Plaintiff's allegations, the records he attached to his complaint show his communications with prison staff about his grievances and their responses or investigations to these complaints. (ECF No. 3) The staff provided reasons for closing each filing and directed Plaintiff to the correct mechanisms for filing future grievances. (*Id.*). Defendant Cool, who Plaintiff seems to target this claim against, was not directly involved in any of these interactions. (*Id.*). In light of these facts, Plaintiff has failed to show a genuine issue of material fact as to whether adverse action was taken against him for filing grievances. Accordingly, summary judgment is granted to Defendants on this claim.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Objections to the Magistrate Judge's R&R are **OVERRULED in part and SUSTAINED in part**. Accordingly, the R&R is **ADOPTED in part and REJECTED in part**. Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part.**

IT IS SO ORDERED.

DATED: March 29, 2024

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE